**CASTEL et al. v. FIRST STATES LIFE CO. et al.**

No. 13839.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 9, 1938.

Claude Spratling and Marvin Roberson, both of Fort Worth, for appellants.

G. R. Lipscomb, of Fort Worth, for appellees.

BROWN, Justice.

This is a typical mutual assessment insurance suit.

It appears that Dr. S. B. Miller, now deceased, on April 1st, 1935, secured a policy of insurance from Old American Life Insurance Company, a mutual assessment

insurance corporation. The amount of insurance provided for was $5,000, but the contract is so worded that there could never be any guarantee that such a sum would be realized, when the claim matures. The premium provided for was $7.50 a month, with provision for other and further assessments.

On September 11th, 1935, the above named insurer, by written contract, sold one hundred and fifty-one (151) policies of insurance, on which the face value of each such policy exceeded $1,000, to First States' Life Company, and the purchasing company assumed liability under such contracts.

The insured died on October 31st, 1935, and eighteen days after his demise the said First States Life Company sold its outstanding policies, having a face value each of over $1,500, to Texas Mutual Life Insurance Association. In the sale was included the policy issued on the life of Dr. S. B. Miller.

Payment having been refused on proof of death and proper demand, the beneficiary, Mrs. Alma Miller, who had, in the meanwhile, married one J. P. Castel, brought suit against First States Life Company and Texas Mutual Life Insurance Association, and several others unnecessary to mention.

The cause was tried to a jury and the trial court instructed the jury to return a verdict for the plaintiffs against Texas Mutual Life Insurance Association, in the sum of $610.80, with six per cent interest from October 31st, 1935, and rendered judgment for the plaintiffs on such instructed verdict, and found for First States Life Company, that the plaintiffs take nothing against it.

The plaintiffs alone have appealed.

We shall not attempt to take up the nine' lengthy assignments of error, one by one, but feel that the case should be disposed of in a terse and simple way, because of the view we have taken of same.

■■ There is no merit in the contention that the appellees are not mutual assessment life insurance companies. They are such and can be measured by the laws applicable to such companies only. Therefore, appellants cannot recover the face value of the policy sued upon unless it be shown that a sum equal to its face value was in the mortuary fund, or came into such fund, when and after the claim matured.

The contract of sale and transfer of the policies from Old American Life Insurance Company to First States Life Company shows that 151 policies were so sold and transferred, and among them was the policy under review.

■ When the Texas Mutual Life Insurance Association, in turn, purchased these policies, after Dr. Miller's death, it, of course, became bound and obligated under them.

It was impossible for the plaintiffs to know how many of such policies were in force at the time of Dr. Miller's death, on October 31st, 1935. All this was within the knowledge and keeping of First States Life Company, and should have been, and doubtless was, within the knowledge and keeping of the last purchaser, Texas Mutual Life Insurance Association. Most certainly it should have known what it purchased that was alive.

But we find from this record that neither of these companies felt duty bound to disclose to the court and jury the facts that would furnish the evidence on which a verdict and judgment could be rendered.

Their attitude, simply stated, is: We deny we owe you anything and, if we do owe you aught, you furnish the evidence to prove how much it is.

■ We desire to go on record here and state that our position on the mutual assessment contracts is unqualifiedly that, the mutual assessment insurance company is liable for the face value of the policy it issues (if it is liable under the policy) unless and until it, by answer and evidence, shows that it has discharged its full duty under the policy and discloses to the court what it had on which to make its contract good and how much it has to apply on its contract, after it has fully discharged its duty thereunder.

No other pronouncement would, in our opinion, serve to protect the innocent policy holders and their beneficiaries from these mutual assessment companies that have promised much and done so little.

■ We hold that having issued a policy for a given sum, if the insurance company owes less than the face value of the contract, such is a defensive matter and the burden is upon the insurer to disclose the facts.

In this particular case, the plaintiffs interrogated every witness that was, or had been, connected with the companies, in an effort to uncover the facts, but the information was not given and the questions were answered either evasively, or the statement made that the witness did not know.

If the burden were on the plaintiffs, they did their utmost to bring the facts to the attention of the court, when they inquired diligently of the very persons who should have known them, and introduced such evidence on the issues as was afforded them.

■ It appears to us that, there being 151 policy holders in the class with Dr. S. B. Miller when his policy and the other 150 were sold to First States Life Company, just 50 days before his death, and the monthly rate appearing to be $7.50, and no effort having been made by the purchasing company, and none by the Texas Mutual Life Insurance Association (which purchased and assumed liability on the policies after Dr. Miller's death), to show how many were in force when the liability under the contract matured at Dr. Miller's death, and no effort made to show that an assessment had been made in good faith, and how much was realized therefrom, that the just and equitable judgment that should have been rendered was a sum equal to 60% of 151, multiplied by $7.50. The proof having shown that 60% of the premiums, or assessments, were applied to the mortuary fund to pay death claims, and 40% was retained for operating expenses.

Therefore, we think the trial court, under these undisputed facts, should have rendered such judgment instead of endeavoring to arrive at some average that was not bottomed on any testimony showing a percent of lapses.

■ We find nothing to warrant a judgment in favor of First States Life Company. Its liability under the policy had accrued when Dr. Miller died, and the fact that subsequent to Dr. Miller's death such company sold the policy to Texas Mutual Life Insurance Association would in no wise relieve it of the responsibility for payment thereon.

The judgment of the trial court finding for First States Life Company is reversed, and judgment is here rendered for appellants against such company, in the sum of $729.50, being 60% of $1,132.50, plus $50, which was admitted to have been in the mortuary fund. And the judgment against Texas Mutual Life Insurance Association is reformed as to such sum, and, as reformed, is affirmed. The judgment by us is rendered jointly and severally against the said two named companies.

In all other respects, the judgment of the trial court is by us undisturbed.